IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VALUE DRUG COMPANY,                    )
                                       )
        Plaintiff,                     )
                v.                     )        Civil No. 3:23-cv-00263
                                       )        Judge Stephanie Haines
ONLY ONE HUB, INK. A/K/A ONLY          )
ONE HUB D/B/A/ PRIMUS                   )
HEALTHCARE AND RICHARD                 )
HERSPERGER,                            )
                                       )
        Defendants.                    )

## OPINION

Value Drug Company ("VDC") filed a Complaint in civil action (ECF No. 1) in Blair County, Pennsylvania against Defendants Only One Hub, Inc. also known as Only One Hub doing business as Primus Healthcare ("OOH"), and against Richard Hersperger ("Hersperger"). Hersperger is the owner and Chief Executive Officer of OOH.  On October 26, 2023, OOH filed a Notice of Removal with the United States District Court for the Western District of Pennsylvania (ECF No. 1; ECF No. 1-2, pp. 95-206 (Exhibit A – Complaint and civil documents)) and the case was placed with this Court.

On November 15, 2023, VDC filed a Motion for a Preliminary Injunction in the form of a limited receiver (ECF No. 11) and a supporting Brief (ECF No. 12) based on OOH's alleged fraud, waste, diversion, gross mismanagement, and dissipation of assets in connection with what was supposed to be a collaborative, mutually beneficial COVID-19 testing project ("Project").  The Court ordered responses from both OOH and Hersperger to be filed no later than November 27, 2023 (ECF No. 14).  OOH timely filed a Response in Opposition (ECF No. 18).[1]  Hersperger to

---

[1] In OOH's Response it refers to itself as Primus Healthcare.

1

date has not filed a Response.  On December 4, 2023, VDC filed a Reply Brief (ECF No. 19) and supporting Exhibits (ECF Nos. 19-23).

## I.     FACTS

VDC is a cooperative of independent pharmacies.  ECF No. 12, p. 2.  It entered a collaborative with OOH that was intended to be mutually beneficial to OOH, VDC, and the member pharmacies of VDC.  The First Project Agreement commemorating the collaborative was in June 2021, and it provided that all physicians involved in the collaborative would be clients of Triple B Billing & Consulting, Inc. ("BBB").  ECF No. 1-2, p. 16, ¶¶ 29-31.  In general, BBB would conduct all accounting matters and would be overseen by OOH.  VDC complains of various problems that occurred under the First Project Agreement, but nevertheless entered into the Second Project Agreement on October 28, 2021.  ECF No. 1-2, pp. 11-12, ¶¶ 58-62.  Under the Second Project Agreement, all physicians were clients of Medical Service Associates ("MSA") or OOH, instead of BBB.  All other terms of the First Project Agreement remained the same.[2]

According to the Agreements, VDC's member pharmacies would conduct interviews with patients, provide instructions to patients for test sampling procedures, collect COVID-19 test samples, and submit the test samples to Genotox Laboratories utilizing packing provided by OOH. ECF No. 1-2, p. 15, ¶ 22.  The pharmacies (and in turn VDC and OOH) would be paid through an arrangement whereby a physician or other qualified nonphysician practitioner would bill for the services provided by pharmacies, then provide the pharmacies with the agreed-upon reimbursement.  *Id.* ¶ 20.  VDC and OOH were to provide relevant software, and OOH was to provide the COVID-19 tests to VDC, which VDC then provided to the pharmacies.  *Id.* ¶ 23.  OOH

---

[2] *See* Complaint for complete description of the responsibilities of the parties to the agreement and the representative shares of the profits (ECF No. 1-2, p, 21-22, ¶¶ 64-70).  *See also* Second Project Agreement (ECF No. 1-2, Exhibit C, pp. 68-75).

managed and oversaw the project, as well as retained, managed, and oversaw the third-party billing company that would submit and collect payments on project claims. *Id.* ¶ 21. VDC states that neither it nor its member pharmacies were responsible for, or had control over, claims submission, processing, or payment. ECF No. 12, p. 3. VDC asserts that Defendants have engaged in misconduct, mismanagement, and fraud in these ways:

   a)   failing to properly submit Project claims;
   b)   failing to obtain reimbursements for Covid-19 tests performed as part of the Project;
   c)   using improper billing codes to submit claims for the Project;
   d)   failing to properly segregate and place into escrow Project payments received;
   e)   failing to properly distribute Project funds;
   f)   failing to provide adequate reports, updates and information to Value Drug and other Project participants;
   g)   making numerous misrepresentations and material omissions to both Value Drug and Value Drug's member pharmacies related to the Project; and
   h)   failing to pay both Value Drug and Value Drug's member pharmacies for Covid-19 tests performed as part of the Project.

ECF No. 12, pp. 3-4. Based on the alleged violations, VDC's Complaint contains eight counts against Defendants. During the pendency of litigation, VDC has asked the Court to order a preliminary injunction in the form of a limited receiver to protect its interests in the collaborative agreement. VDC's relief sought in the injunction is:

   a)   That OOH shall be required to comply with the terms of the Second Project Agreement (as defined in the Complaint) in all respects;
   b)   That a limited receiver shall be appointed to ensure that OOH is complying with its duties and obligations related to claims submission, obtaining payment on Project claims, handling Project payments, distributing Project payments, and making periodic reports to Value Drug;
   c)   That the receiver shall verify that OOH maintains and deposits all Project payments collected into an escrow account;
   d)   That, on a monthly basis, OOH shall provide verification to the receiver that all payments collected as part of the Project are distributed into that escrow account;
   e)   That on a monthly basis, OOH shall send the receiver electronic reports showing: (i) Project claims that have not yet been submitted to third-party payers, and the amounts of such claims; (ii) Project claims that have been submitted to third-party payers but are pending, and the amounts of such claims; (iii) Project claims that

have been rejected by third-party payers, and the amounts of such claims; (iv) payments for the Project that have been collected; and (v) to whom Project payments have been distributed, and the amounts of such distributions.

f)  That these reports shall set forth total amounts, as well as pharmacy-level details;

g)  That the limited receiver shall provide Value Drug with copies of all reports, and Value Drug shall be permitted to share the reports with its member pharmacies;

h)  That, with respect to Project claims that have been rejected by third-party payers, within thirty (30) days of such rejection, OOH shall provide the receiver with a plan to appeal the rejection of a claim or otherwise ensure that the claim is paid;

i)  That the receiver shall notify Value Drug of any such rejections and provide Value Drug with copies of any such plans, which Value Drug shall be permitted to share with its member pharmacies;

j)  That, to the extent Value Drug has questions or concerns regarding any of the reports or plans produced by OOH, OOH shall be required to fully respond to such questions or concerns within seven (7) days.  The receiver shall ensure that OOH provides full and timely responses to Value Drug's questions and concerns;

k)  That in all other respects, OOH shall continue to operate its business in the ordinary course; and

l)  That OOH shall not be prevented from entering into transactions and paying reasonable expenses in the ordinary course of business, consistent with industry custom;

m)  That within twenty (20) days, Value Drug shall provide a list of three (3) recommended third-party receivers, from which the Court will select a limited receiver to monitor OOH's compliance with the obligations of the order appointing a receiver;

n)  That the receiver shall notify Value Drug's counsel of record in these proceedings, Sherrard, German & Kelly, P.C., and this Court regarding any suspected violations of the order appointing a receiver;

o)  That the receivership shall remain in place until the appointed receiver reasonably determines that all Project claims have been submitted and processed, and that all possible Project payments have been obtained and distributed to Project participants in accordance with the operative Project agreement between Value Drug and OOH;

p)  That Value Drug and OOH shall equally split all costs associated with the receiver; and

q)  That Value Drug shall be directed to file a nominal bond.

ECF No. 12, pp. 5-6.

OOH objects to the proffered receivership in its Response (ECF No. 18) for two reasons. First, it states that the Second Project Agreement is expired and should not be enforced and second, it claims the reporting requirements and arbitrary deadlines set by VDC would be overly burdensome.  ECF No. 18, ¶¶ 18,19.  The Court will address the objections of OOH in turn.

## II.    STANDARD

It is well settled that the appointment of a receiver is within the inherent equitable powers of a federal court. *See Tanzer v. Huffines,* 408 F.2d 42, 43 (3d Cir.1969). That said, "the appointment of a receiver is 'an extraordinary remedy, and ought never be made except in cases of necessity, and upon a clear and satisfactory showing that [an] emergency exists.'" *Walsh v. Kenworth Trucks of Phila.,* Civ. A. No. 81–4636, 1985 WL 2770, at *1 (E.D.Pa. Sept.26, 1985) (citing *Rumbaugh v. Beck,* 491 F.Supp. 511, 520 (E.D.Pa.1980). Furthermore, a receiver must be absolutely necessary "'to protect the interests of the plaintiff in the property involved." *Id.; see generally Stainton v. Tarantino,* 637 F.Supp. 1051, 1072 (E.D.Pa.1989) ("[A] court should exercise its power to appoint a receiver sparingly, with caution and circumspection, and only in an extreme case under extraordinary circumstances, or under such circumstances as demand or require summary relief.") (internal citations omitted).

## III.    DISCUSSION

### A.  The Second Project Agreement

VDC's requested requirement a) states, "That OOH shall be required to comply with the terms of the Second Project Agreement (as defined in the Complaint) in all respects." OOH claims that the Second Project Agreement is no longer an enforceable agreement between the parties and therefore, this is not an appropriate requirement.   ECF No. 18, ¶ 13.   The Second Project Agreement (ECF No. 1-2, Exhibit C, pp. 68-75) states the term as "One Year from the date of Execution "Execution Date" and continues in full force and effect for a period of one year. Agreement will renew for another year provided all parties agree no less than 30 days prior to the anniversary date." ECF No. 102, p. 73.   OOH states the parties did not renew the Agreement. OOH also states that by the expiration of the Second Project Agreement, which would have been

5

October 2022, most of the parties to the Agreement, including Value Drug, were no longer operating under the collaborative agreement.[3]   ECF No. 18, ¶ 15.   VDC counters in its Reply that the enforceability is irrelevant to the issue of whether a limited receiver should be appointed.   ECF No. 19, p. 3.   VDC further states that even if OOH's involvement in billing were not commemorated in the Second Project Agreement, OOH's agreement to manage the billing and collections from the inception of the Project is evident in the historical email exchanges of the Project.   *See* ECF Nos. 20-23, including attached exhibits.   In other words, aside from the Second Project Agreement, Defendants voluntarily assumed control over and responsibility for Project billings and collections.   ECF No. 19, p. 4.

The Court agrees that enforcing the Second Project Agreement as a provision of the receivership is improper.   According to the Second Project Agreement, the services to be rendered by OOH include training and marketing and adherence to compliance rules (ECF No. 11-1, p. 62 (c)), which would be wholly inapplicable when the parties are no longer engaged in business together and the duties are unrelated to billing and collections.   In addition, the language used in requirement a), "That OOH shall be required to comply with the terms of the Second Project Agreement (as defined in the Complaint) *in all respects,*" is vague and overly broad.   ECF No. 12, p. 5 (emphasis added).   Therefore, item a) of the suggested receivership terms is unsuitable and inapplicable to the appointment of a receivership.

However, understanding that Defendants, through oversight of the billing companies, and as evidenced through email exchange, had a primary role in billing and collections, all other items of the receivership, b) through q), are appropriate.   The Second Project Agreement provides that

---

[3] OOH claims that billing obligations are with a "separate entity" and cannot be assigned to another party according to the language of the Second Project Agreement.   OOH says that VDC mistakenly asserts that the third-party billing ("separate billing entity") obligations were assigned to Primus Healthcare (aka OOH).   As stated above, OOH oversaw the operations of the billing party, and the Court finds this to be enough to order the provisions for the receivership.

MSA, who is overseen by OOH, was responsible for account maintenance and reporting. ECF No. 11-1, p. 63 (d). Therefore, accounting responsibilities were at least partly the responsibility of OOH, and the tasks described in the Second Project Agreement overlap the suggested requirements of the receivership.[4]

The Second Project Agreement also indicates that "[a]ll revenue from the assessment and collection of the test will be shared between the Pharmacy and Physicians/Billing." ECF No. 11-1, p. 64. "As the appointment of a receiver interferes with the defendant's property rights, the party seeking the appointment must show that he has some 'legally recognized right [in the property] ... amounting to more than a mere claim against the [defendant].'" *Berger v. Weinstein*, No. CIV. A. 07-994, 2008 WL 191172, at *12 (E.D. Pa. Jan. 23, 2008) (quoting *Mintzer v. Arthur L. Wright & Co.,* 263 F.2d 823, 825 (3d Cir.1959)); *see also Walsh,* 1985 WL 2770, at *1 (identification by a plaintiff of a legally-cognizable property interest in a defendant's property is "prerequisite" to appointment of a receiver). VDC obviously has a legally cognizable right to proceeds that were assigned to it in the Second Project Agreement. Given the construction of the contract in place during the collaborative, VDC may have a receiver oversee the reconciliation of the financial transactions that occurred while the parties were engaged in business together.

**B. Overly Burdensome**

OOH claims that the requirements for reporting to the receiver are overly burdensome but does not explain why. There is no question that a preliminary injunction must be properly tailored to adequately protect Plaintiff's interests, without being overbroad or overly intrusive. *See Berger,* 2008 WL 191172, at *11. Except for provision a), which the Court has excluded, the receivership

---

[4] VDC argues that the Second Project Agreement was renewed by way of participation and did not require a signed writing. This Court need not determine whether the Second Project Agreement is expired. It agrees with VDC that termination of a contract does not excuse the parties from past performance that arose under an indisputably valid contract. ECF No. 19, p. 5.

provisions reflect accounting provisions in the Second Project Agreement. These responsibilities were assigned to medical billing and overseen by OOH. In addition, it seems that Defendants assumed a substantial role in the billing processes of the Project. Therefore, OOH should be well-versed in the operations of billing and the requirements of the receivership should not be unduly difficult or interfere with the daily operations of OOH. It is also the Court's understanding that the collaborative is no longer active so that activity on the accounts should be stagnant and the work required would simply be recovery of records and reporting. As requested, it is a *limited* receivership until all possible Project claims have been submitted and processed, and all possible Project payments have been obtained and distributed. ECF No. 12, p. 14.

### C. Injunctive Relief

There are nine factors that federal courts typically apply for determining whether a receiver should be appointed:

(1) the probability of the plaintiff's success in the action;
(2) the possibility of irreparable injury to the plaintiff's interests in property;
(3) the inadequacy of the security to satisfy the debt;
(4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;
(5) the financial position of the debtor;
(6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
(7) the inadequacy of the available legal remedies;
(8) the lack of a less drastic equitable remedy; and
(9) the likelihood that appointing a receiver will do more harm than good.

*Manufacturers & Traders Tr. Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 816 (W.D. Pa. 2013).[5]

Using these factors as guidance, the Court finds a receiver is appropriate. (1) Drawing all reasonable inferences in favor of complainant, VDC pled sufficient facts to support appointing a

---

[5] *See* VDC's Brief (ECF No. 12, pp. 9-13), for full arguments in favor of receivership.

receiver. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009). (2) VDC informed the Court that "it has absolutely no way to verify Defendants' representations concerning Project claims and payments or to calculate the full extent of the injury that Defendants have caused." ECF No. 12, p. 2. Given the lack of access to records and information, the Court finds there is the possibility of irreparable harm to VDC's interests in the property. OOH's claim that it could have assets to satisfy VDC's claims, ECF No. 18, p. 6, is unpersuasive and doesn't eliminate the potential for irreparable harm in the form of non-monetary intangibles.[6] (3) VDC says it was not given any security that could satisfy or offset its potential losses in the collaborative. OOH does not contest this statement. (4) VDC claims there is significant probability that Defendants are engaging in fraudulent conduct. OOH does not contest this statement. (5) Discovery has not started and, therefore, the financial stability of Defendants is unknown. OOH responds that VDC fails to show OOH's assets are inadequate to satisfy its debts and that it offered a good-faith prepayment of funds due.[7] ECF No. 18, p. 6. Again, the Court finds OOH's argument of possible funds unpersuasive. (6) Property is at risk of disappearing because VDC is completely ignorant as to how funds are being handled. OOH does not contest this. (7) VDC says legal remedies are inadequate. OOH contests this claiming that its assets might satisfy any judgment. The Court cannot rely on a vague indication that an unknown judgment could be satisfied by unknown assets. It is prudent to put mechanisms in place to capture reliable facts to support a potential judgment. (8) The Court does not consider the proposed receivership as drastic or unwarranted. To bolster

---

[6] In its Reply VDC provides reports of Project revenues collected for the months of June and August (ECF Nos.19-2, 19-3) and states that these revenues were in no way adequate to satisfy OOH's debt Project participants. ECF No. 19, p. 9.
[7] VDC says it rejected the offer of pre-payment of $50,000 because it "did not know the source of the payment, did not want to jeopardize any of its legitimate claims against OOH, and did not want to signal to OOH that its conduct … was acceptable…" ECF No. 19, p.10.

the reasonability of the receivership, VDC suggests it pay half the cost of the receiver and put up the bond. (9)  It is the Courts opinion that a limited receivership will do more good, than harm.

The Court finds that the burden to OOH of the appointment of the receiver is outweighed by the need to obtain such records for a fair outcome.

Having determined that the form of receivership would be appropriate, the Court must determine whether injunctive relief is proper.  The imposition of injunctive relief is considered under four factors: "(1) a likelihood that the plaintiff will prevail on the merits; (2) the extent to which plaintiff is irreparably harmed by the conduct of the defendant; (3) the extent to which the defendant will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Sunquest Info. Sys., Inc. v. Park City Solutions, Inc.*, 130 F. Supp. 2d 680, 690 (W.D. Pa. 2000) (citing *Pappan Enters. V. Hardee's Food Sys.*, 143 F.3d 800, 803 (3d Cir. 1998)).

Many factors considered here were already considered above.  The Court found that (1) VDC has presented a plausible claim that could prevail on the merits and (2) that there is potential that VDC would suffer irreparable harm by the alleged conduct of the Defendants.  As to (3) the Court found that the receivership was not overly burdensome to OOH, nor can the Court envision any irreparable harm to Defendants.  In fact, a proper accounting could only benefit the parties in anticipation of the resolution of this case.  Finally, as to (4), it is in the public's interest to assure proper payment to, and protect the rights of, service-to-community companies.

IT IS ORDERED that VDC's Motion to Appoint Receiver, Motion for Preliminary Injunction (ECF No. 11) is GRANTED as follows:

a) That a limited receiver shall be appointed to ensure that OOH is complying with its duties and obligations related to claims submission, obtaining payment on Project claims, handling Project payments, distributing Project payments, and making periodic reports to Value Drug;

b) That the receiver shall verify that OOH maintains and deposits all Project payments collected into an escrow account;

c) That, on a monthly basis, OOH shall provide verification to the receiver that all payments collected as part of the Project are distributed into that escrow account;

d) That on a monthly basis, OOH shall send the receiver electronic reports showing: (i) Project claims that have not yet been submitted to third-party payers, and the amounts of such claims; (ii) Project claims that have been submitted to third-party payers but are pending, and the amounts of such claims; (iii) Project claims that have been rejected by third-party payers, and the amounts of such claims; (iv) payments for the Project that have been collected; and (v) to whom Project payments have been distributed, and the amounts of such distributions;

e) That these reports shall set forth total amounts, as well as pharmacy-level details;

f) That the limited receiver shall provide Value Drug with copies of all reports, and Value Drug shall be permitted to share the reports with its member pharmacies;

g) That, with respect to Project claims that have been rejected by third-party payers, within thirty (30) days of such rejection, OOH shall provide the receiver with a plan to appeal the rejection of a claim or otherwise ensure that the claim is paid;

h) That the receiver shall notify Value Drug of any such rejections and provide Value Drug with copies of any such plans, which Value Drug shall be permitted to share with its member pharmacies;

i) That, to the extent Value Drug has questions or concerns regarding any of the reports or plans produced by OOH, OOH shall be required to fully respond to such questions or concerns within seven (7) days. The receiver shall ensure that OOH provides full and timely responses to Value Drug's questions and concerns;

j) That in all other respects, OOH shall continue to operate its business in the ordinary course; and

k) That OOH shall not be prevented from entering into transactions and paying reasonable expenses in the ordinary course of business, consistent with industry custom;

l) That within twenty (20) days, Value Drug shall provide a list of three (3) recommended third-party receivers, from which the Court will select a limited receiver to monitor OOH's compliance with the obligations of the order appointing a receiver;

m) That the receiver shall notify Value Drug's counsel of record in these proceedings, Sherrard, German & Kelly, P.C., and this Court regarding any suspected violations of the order appointing a receiver;

n) That the receivership shall remain in place until the appointed receiver reasonably determines that all Project claims have been submitted and processed, and that all possible Project payments have been obtained and distributed to Project participants in accordance with the operative Project agreement between Value Drug and OOH;

o) That Value Drug and OOH shall equally split all costs associated with the receiver; and,

p) That Value Drug shall be directed to file a nominal bond.

Dated:  December 11, 2023

Stephanie L. Haines
United States District Judge