## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VALUE DRUG COMPANY,        )
                                 )
     Plaintiff,              )
             v.           )     Civil No. 3:23-cv-00263
                                 )     Judge Stephanie Haines
ONLY ONE HUB, INK. A/K/A ONLY    )
ONE HUB D/B/A/ PRIMUS         )
HEALTHCARE AND RICHARD      )
HERSPERGER,                )
                                 )
     Defendants.          )

## OPINION

Value Drug Company ("VDC") filed a Complaint in civil action (ECF No. 1) in Blair County, Pennsylvania against defendants Only One Hub, Inc. also known as Only One Hub doing business as Primus Healthcare ("OOH"), and against Richard Hersperger ("Hersperger") (collectively "Defendants"). Hersperger is the owner and Chief Executive Officer of OOH as well as a shareholder of OOH. On October 26, 2023, OOH filed a Notice of Removal with the United States District Court for the Western District of Pennsylvania (ECF No. 1; ECF No. 1-2, pp. 95-206 (Exhibit A – Complaint and civil documents)) and the case was placed with this Federal Court.

After deficient attempts to file Motions to Dismiss by Defendants (ECF Nos. 8,13,16,17), OOH filed a Second Motion to Dismiss (ECF No. 29) and Brief (ECF No. 30) and Hersperger did the same (ECF Nos. 31, 32). Value Drug responded to OOH (ECF No. 38) and Hersperger (ECF No. 37). In the interim, the Court granted a Motion for Preliminary Injunction in the form of a limited receiver (ECF Nos. 11, 24, 25), and assigned the limited receiver on February 13, 2024 (ECF No. 40). The Court will now address the Motions to Dismiss filed by defendant OOH and

1

defendant Hersperger in turn.  When Defendants' arguments are duplicative, the Court will address the issues applying the analysis to both Defendants.

## I.      FACTS[1]

VDC is a cooperative of independent pharmacies.  ECF No. 12, p. 2.  It entered a collaborative with OOH that was intended to be mutually beneficial to OOH, VDC, and the member pharmacies of VDC.  The First Project Agreement commemorating the collaborative was in June 2021, and it provided that all physicians involved in the collaborative would be clients of Triple B Billing & Consulting, Inc. ("BBB").  ECF No. 1-2, p. 16, ¶¶ 29-31.  In general, BBB would conduct all accounting matters and would be overseen by OOH.  VDC complains of various problems that occurred under the First Project Agreement yet entered into the Second Project Agreement on October 28, 2021.  ECF No. 1-2, pp. 11-12, ¶¶ 58-62.  Under the Second Project Agreement, all physicians were clients of Medical Service Associates ("MSA") or OOH, instead of BBB.  All other terms of the First Project Agreement remained the same.[2]  The Second Project Agreement states the term as "One Year from the date of Execution "Execution Date" and continues in full force and effect for a period of one year.  Agreement will renew for another year provided all parties agree no less than 30 days prior to the anniversary date." [3] ECF No. 1-2, p. 73.

According to the Agreements, VDC's member pharmacies would conduct interviews with patients, provide instructions to patients for test sampling procedures, collect COVID-19 test samples, and submit the test samples to Genotox Laboratories utilizing packing provided by OOH.  ECF No. 1-2, p. 15, ¶ 22.  The pharmacies (and in turn VDC and OOH) would be paid through an

---

[1] The facts derive from VDC's Complaint (ECF No. 1-2).

[2] *See* Complaint for complete description of the responsibilities of the parties to the agreement and the representative shares of the profits (ECF No. 1-2, p, 21-22, ¶¶ 64-70).  *See also* Second Project Agreement (ECF No. 1-2, Exhibit C, pp. 68-75.

[3] VDC argues that the Second Project Agreement was renewed by participation and did not require a signed writing. This Court need not determine whether the Second Project Agreement is expired.  Termination of a contract does not excuse the parties from past performance that arose under a valid contract.  ECF No. 19, p. 5.

arrangement in which a physician or other qualified nonphysician practitioner would bill for the services provided by pharmacies, then provide the pharmacies with the agreed-upon reimbursement. *Id.* ¶ 20. VDC and OOH were to provide relevant software, and OOH was to provide the COVID-19 tests to VDC, which VDC then provided to the pharmacies. *Id.* ¶ 23.

OOH managed and oversaw the project, as well as retained, managed, and oversaw the third-party billing company that would submit and collect payments on project claims. *Id.* ¶ 21. VDC states that neither it nor its member pharmacies were responsible for, or had control over, claims submission, processing, or payment. ECF No. 12, p. 3. VDC asserts that Defendants engaged in misconduct, mismanagement, and fraud in the following ways:

a) failing to properly submit Project claims;
b) failing to obtain reimbursements for Covid-19 tests performed as part of the Project;
c) using improper billing codes to submit claims for the Project;
d) failing to properly segregate and place into escrow Project payments received;
e) failing to properly distribute Project funds;
f) failing to provide adequate reports, updates and information to Value Drug and other Project participants;
g) making numerous misrepresentations and material omissions to both Value Drug and Value Drug's member pharmacies related to the Project; and
h) failing to pay both Value Drug and Value Drug's member pharmacies for Covid-19 tests performed as part of the Project.

ECF No. 12, pp. 3-4.

## II. STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C.

Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555.  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss under Rule 12(b)(6), the court must generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). A court may take judicial notice of documents filed in other court proceedings because they are matters of public record. *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

## III.     DISCUSSION

VDC's Complaint contains six causes of action. (1) Breach of Contract – Second Project Agreement as to OOH. (2) Breach of Contract – First Project Agreement as to OOH. (3) Unjust Enrichment (in the alternative) as to OOH. (4) Negligent Misrepresentation as to both Defendants. (5) Fraud as to both Defendants. (6) Legal Accounting as to OOH. The Court will address each claim and Defendants' responses in turn. The Court will not address OOH's request for dismissal of the Preliminary Injunction for Appointment of a Limited Receiver. That issue has been fully briefed, considered, and decided by the Court. *See* ECF Nos. 24, 34, 36, 40.

### A.  Breach of Second Project Agreement as to OOH

OOH asserts that VDC's Breach of Contract claim for Second Project Agreement (ECF No. 1-2, Exhibit C, pp. 68-75) should be dismissed for failure to state a claim upon which relief can be granted. In general, VDC claimed that billing was overseen or conducted by OOH, and it was performed improperly, and therefore OOH is liable for breach of contract. "A plaintiff must

generally establish three elements to support a breach of contract claim: (1) 'the existence of a contract, including its essential terms'; (2) 'a breach of a duty imposed by the contract'; and (3) 'resultant damages.'" *Fortunato v. CGA L. Firm,* No. 1:17-CV-00201, 2018 WL 4635963, at *3 (M.D. Pa. Sept. 27, 2018) (citing *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)).

OOH states that VDC's claims of breach are based on legal conclusions rather than actual terms of the contract. From OOH's argument, the Court perceives that OOH contests element two because according to the Second Project Agreement OOH was not in charge of billing or payments, therefore there was no breach of a duty imposed by the contract. ECF No. 30, p. 3. OOH also relies on the fact that billing was part of BBB or MSA's responsibilities and assignment of billing to OOH was not allowable without written consent per the Second Project Agreement. ECF No. 1-2, p. 161.[4] OOH asserts a valid assignment was never made to OOH from BBB or MSA.

As stated in the Court's last Opinion (ECF No. 24), even if OOH's involvement in billing were not commemorated in the Second Project Agreement or by assignment, OOH's agreement to manage the billing and collections from the start of the Project is plausible given the factual assertions made by VDC. VDC states Defendants voluntarily assumed control over and responsibility for Project billings and collections. ECF No. 19, p. 4. The Second Project Agreement provides that MSA, who is overseen by OOH, was responsible for account maintenance and reporting. ECF No. 11-1, p. 63 (d). Therefore, accounting responsibilities were at least partly the responsibility of OOH.[5]

---

[4] OOH's and Hersperger's arguments seeking dismissal of VDC's claims because it did not attach a copy of the executed Agreement is misplaced and will be ignored by the Court. It is based on a Pennsylvania Rule of Civil Procedure that is not required in a Federal District Court, where this case is being litigated.

[5] The Court acknowledges VDC's argument that it has already opined on certain issues in the context of its Preliminary Injunction for a Limited Receiver opinion. It is noteworthy to state that the rule of law under which the Court evaluates the issues in a preliminary injunction motion is different from the rule of law for a motion to dismiss so that the law of the case doctrine may not necessarily apply.

The Court finds that by the contract terms OOH was not responsible for billing and there was no assignment of responsibility of billing to it by MSA, the party responsible for billing. That said, the Court also finds that there are plausible arguments that actions that occurred during the course of the business venture that indicate that OOH had at least some responsibility for billing and related responsibilities. "[I]t is well settled under Pennsylvania law that a written agreement can be modified or amended by a subsequent agreement." *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.,* 929 F. Supp. 2d 460, 467 (W.D. Pa. 2013). A contractual provision prohibiting any modification unless it is in writing is not fatal to amending a contract because such provision can be waived. *See Wagner v. Graziano Constr. Co.,* 136 A.2d 82, 84 (1957) ("Even where the contract specifically states that no non-written modification will be recognized, the parties may yet alter their agreement by parol negotiation.") ("It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. And this may be shown by parol, by showing either an express agreement or actions necessarily involving the alterations."(citation omitted)); *First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 280 (3d Cir. 1987) (a modification to a contract that is proven by clear, precise, and convincing evidence "is valid despite a provision in the original written agreement prohibiting non-written modifications"); *Universal Builders, Inc. v. Moon Motor Lodge, Inc.,* 244 A.2d 10, 15 (Pa. 1968) (a "contract can be modified orally although it provides that it can be modified only in writing.").[6]

---

[6] "The parol evidence rule does not bar evidence of a subsequent change from admission because the rule 'does not apply to or prohibit a subsequent modification by parol; it applies only to prior or contemporaneous statements or agreements which induced the written agreement in question.'" *Elliott–Lewis Corp. v. York–Shipley, Inc.,* 94 A.2d 47, 49 (Pa. 1953) (citing *Grubb v. Rockey,* 79 A.2d 255, 258 (Pa. 1951)).

Here, although the contract provides only for assignment with written agreement, VDC has asserted a plausible claim that OOH assumed responsibility for billing and oversight and that would be enough to modify the contract to allow for a breach of contract claim.  The Motion to Dismiss the Breach of Contract claim for the Second Project Agreement as to OOH will be denied.

### B.  Breach of First Project Agreement as to OOH

OOH asks the Court to dismiss the claim of beach of the First Project Agreement because VDC has not attached a valid First Project Agreement to the pleading.  As stated in fn 2 above, this is a wholly invalid argument relying on Pennsylvania Rules of Civil Procedure in a Federal proceeding and it is summarily denied.

### C.  Unjust Enrichment as to OOH (in the alternative)

VDC argues that it has conferred benefits to OOH by fulfilling its obligations according to the contract and OOH accepted the benefits without fulfilling its obligations.  VDC claims it would be unjust and inequitable for OOH to keep those benefits without due compensation to VDC.  ECF No. 1-2, ¶¶ 186-89.  An unjust enrichment claim may be brought in the alternative should the validity of a contract be in question.  *See Crown Coal & Coke Co.,* 929 F. Supp. 2d at 467 ("The unjust enrichment claim properly has been raised as a form of alternative pleading because Crown disputes the validity of the amendment and the elements can be satisfied if Powhatan cannot recover on its breach of contract claim.").  "By its nature, the doctrine of quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists." *Lackner v. Glosser,* 892 A.2d 21, 34 (Pa. Super.2006) (citing *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super.1999)).

Here it cannot be said that OOH challenges the validity of the existence of a contract.  OOH disputes that it assumed the responsibility of billing and collections and thus claims it is not liable for a breach of that specific duty.  Because the factual determinations that will necessarily be made

pursuant to VDC's breach of contract claims have the potential to provide it with complete relief, an unjust enrichment claim currently cannot be maintained against OOH. Therefore, OOH's motion to dismiss the unjust enrichment claim will be dismissed without prejudice to its reinstatement in the event further proceedings lead to an equitable basis for asserting the claim. *See Crown Coal & Coke Co.,* 929 F. Supp. 2d at 474.

### D.  Negligent Misrepresentation as to Defendants

VDC asserts a negligent misrepresentation claim against Defendants because it relied on misrepresented facts related to the Project when entering into the joint venture.  ECF No. 1-2, ¶ 192.  Pennsylvania has adopted the Restatement (Second) of Torts § 552 governing negligent misrepresentation.  *See Gibbs v. Ernst,* 647 A.2d 882, 890 (Pa. 1994) (discussing and adopting § 552).  That section provides that

> liability exists for negligent misrepresentation where: (1) the defendant, in the course of his business or in a transaction in which he has a pecuniary interest, supplied false information with respect to that transaction or business; (2) the plaintiff justifiably relied on the false information in making a decision; and (3) the defendant was negligent in failing to exercise the reasonable care necessary in providing the information, that is, he either knew or should have known the truth or falsity of his representation.

*State Coll. Area Sch. Dist. v. Royal Bank of Canada*, 825 F. Supp. 2d 573, 584 (M.D. Pa. 2011). VDC states that "OOH and Hersperger later reversed course, ignored their prior representations, or made completely different contradictory representations.  [They] made a myriad [of] material misrepresentations to [VDC] under circumstances in which OOH and Hersperger should have known their falsity."  ECF No. 1-2, ¶¶ 192-94.  The Court rejects Defendants arguments below and finds that VDC has made a plausible claim of negligent misrepresentation against Defendants and the claim will not be dismissed.

### 1.  Gist of the Action Doctrine

OOH counters stating that the nature of VDC's claim sounds in contract, not tort, and therefore, gist of the action doctrine applies barring this tort claim.  ECF No. 30, p. 7.

> Under Pennsylvania law, the gist of the action doctrine acts to foreclose tort and fraud claims: (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. [*See*] *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005); *eToll, Inc. v. Elias/Savion Advertising, Inc*., 811 A.2d 10, 19 (Pa. Super. 2002).

ECF No. 30, pp. 7-8.  The gist of the doctrine is inapplicable because the actions that VDC complains of were not terms of the contract, specifically.  VDC states that it relied on Defendants' expertise in managing billing; Defendants creation of a functional HIPAA-compliant patient database; Defendants use of proper billing codes; Defendants transparency in matters pertaining to billing; Defendants proper handling and safeguarding of Project funds; and Defendants willingness to work collaboratively with VCD and member pharmacies.  ECF No. 1-2, pp. 41-42. Defendants themselves argue that none of these responsibilities were designated to Defendants in the contracts, but these assurances were relied upon by VDC to enter into and remain compliant with the contract.  Defendants cannot on one hand state that they were not responsible because it was not in the contract (see above) and then later state they are not responsible because the action was covered in the contract.

"In general, the difference between contract claims and tort claims depends upon the origin of the duties alleged to have been breached by the defendant's conduct. 'Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.'" *Crown Coal & Coke Co.,* 929 F. Supp. 2d 460, 474 (quoting *eToll, Inc.,* 811 A.2d at 14)).  "To be

sure, the two causes of action are not mutually distinct. To the contrary, it is quite possible that breach of contract also gives rise to an actionable tort." *Id.* (internal citations omitted).

> In general, the courts have applied the gist of the action doctrine to bar tort claims in four separate settings: (1) were the claims arise from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where a tort claim essentially duplicates a breach of contract claim or its success is wholly dependent on the terms of a contract.

*Id.* at 475. The alleged negligent actions do not arise or stem from the contract nor are they duties that were laid out in writing. The Court does not find that the negligent misrepresentation claims made against Defendants for their promises as they relate to the Project duplicate the breach of contract claim that Defendants breached the contract in failing to make payments to VDC and its member pharmacies.

## 2. Economic Loss Doctrine

OOH also argues that a claim for negligent misrepresentation fails because of the economic loss doctrine. "The Economic Loss Doctrine is intended to prohibit a plaintiff from 'recovering in tort economic losses to which [his] entitlement flows only from a contract.'" *Brock v. Thomas*, 782 F. Supp. 2d 133, 143 (E.D. Pa. 2011) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995)). "[N]o cause of action exists for negligence that causes only economic loss." *Aikens v. Baltimore and Ohio R. Co.*, 501 A.2d 277, 279 (Pa. 1985). Citing *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), VDC retorts that this doctrine does not apply. *Dittman* focus on this Court's decisions in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005) and *Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009). It used the "reasoned approach rule."

> [The] application of the 'economic loss' rule maintains the dividing line between tort and contract while recognizing the realities of modern tort law. Purely 'economic loss' may be recoverable under a variety of tort theories. The question,

> thus, is not whether the damages are physical or economic. Rather, the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed. A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of duty arising independently of any contract duties between the parties, however, may support a tort action.

*Dittman*, 196 A.3d at 1052. After consideration of previous caselaw, the *Dittman* Court held "that those cases do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages." *Id.* at 1054. Instead, the Court's analysis "turns on the determination of the source of the duty plaintiff claims the defendant owed." *Id.* ((citation omitted) quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995). "Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id.*

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *See generally Dumanski v. City of Erie,* 348 Pa. 505, 507, 34 A.2d 508, 509 (1943) (relationship between the parties), *Forster v. Manchester,* 410 Pa. 192, 197, 189 A.2d 147, 150 (1963) (social utility), *Clewell v. Pummer,* 384 Pa. 515, 520, 121 A.2d 459, 463 (1956) (nature of risk), *Witthoeft v. Kiskaddon,* 557 Pa. 340, 353, 733 A.2d 623, 630 (1999) (foreseeability of harm), *Cruet v. Certain-Teed Corp.,* 432 Pa.Super. 554, 558, 639 A.2d 478, 479 (1994) (relationship, nature of risk and public interest in the proposed solution).

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000). The Court finds the factors support assigning OOH a duty to VDC to conduct business in a transparent and honest manner. OOH and VDC were parties to a joint venture and as such owed a fiduciary duty to one another

12

which incurs all the factors.  This fiduciary duty is independent of the terms of the contract. Therefore, the economic loss doctrine does not apply.

It is appropriate now to address Hersperger's defense that he was not a party to the Project Agreements here.  The allegations against Hersperger are based in tort, not founded on the contract as evident in the analysis above.  In fact, for the allegations to stand, as the Court determined, they must have a basis outside the allegations for breach.  The Court found that they have and so Hersperger's defense that he was not party to the contract is inapplicable and unpersuasive as a defense to VDC's tort claims.

### 3.  Insufficient Service of Process (Hersperger)

Hersperger claims that he was never properly served the Complaint and paperwork for this case.  ECF No. 32, p. 2.  He states that acceptance of service was filed by counsel for OOH for him and he never authorized counsel to accept or waive service of original process on his behalf. *Id.*  He also states that counsel for OOH has never represented him in his individual capacity in this matter and therefore the court lacks personal jurisdiction and cannot enter judgment against him.  *Id.* at 3.

VDC responds that Hersperger is the CEO and an owner of OOH and that it is very common for the same attorney to represent a company and any executives that are sued in their individual capacity.  ECF No. 37, p. 7.  Plaintiff was not told that OOH's counsel was not representing Hersperger until October 19, 2023.  Furthermore, counsel accepted service and so service was properly effectuated before October 19.  *Id.* at 8.  It is undisputed that Hersperger was aware of the lawsuit, and he claims he learned of it when he reviewed a copy of VDC's Affidavit of Default filed on November 6, 2023.  ECF No. 32, p. 3 (ECF No. 5).

A party may move for dismissal based on insufficient process under Rule 12(b)(5) of the Federal Rules of Civil Procedure which attacks the manner in which a summons and complaint were, or were not, served.  When a Rule 12(b)(5) motion is raised by a defendant, the burden shifts to the plaintiff to prove that service was properly effectuated.  If service was ineffective, courts should allow a plaintiff an opportunity to cure service, as long as such efforts would not be futile.  *See Phillips v. Woodforest Constr., LLC*, 2023 VI SUPER 42U, ¶ 9 (V.I. Super. July 31, 2023).  A plaintiff must serve a defendant with a summons and a copy of the complaint within 90 days of filing the complaint.  Fed. R. Civ. P. 4(c), (m).  If a plaintiff fails to do so, the court must dismiss the case without prejudice or order that the plaintiff serve the defendant within a specified time, absent good cause for that failure.  *Id.* 4(m).  "Even absent good cause, the court must consider whether to grant a discretionary extension."  *Huerta v. Green, Tweed & Co.,* No. CV 18-1776, 2019 WL 13273155, at *2 (E.D. Pa. Feb. 15, 2019) (citing *M. K. by & through Barlowe K. v. Prestige Acad. Charter Sch.*, No. 17-2575, 2018 WL 4922796, at *2 (3d Cir. Oct. 10, 2018) (internal citations omitted)).

Given the miscommunication that occurred as to representation of Hersperger, and the fact that service was accepted by counsel for OOH, the Court exercises its discretion and extends the deadline in which to carry out service to Hersperger.  Service must be effectuated according to the Federal Rules of Civil Procedure and it must be done on or before August 2, 2024.  The Court declines to dismiss the civil action on the basis of improper service, especially given that Hersperger is aware of the case and has been able to respond to pleadings with knowledge of the claims and timely.

### 4. Executive Capacity (Hersperger)

Hersperger defends that he cannot be held liable in his individual capacity for any wrongdoing pertaining to the joint venture. As stated above, he is the Chief Executive Officer of OOH and a shareholder, and he depends on these titles to exempt him from liability. First, he states, "Any alleged representations made by Mr. Hersperger related to the Covid-19 Testing Project were done in his capacity as an executive officer and/or shareholder of [OOH] and not in his individual capacity." *Id.* In support of this defense, he points to the Indemnification Section of the Project Agreements.[7] But Hersperger misunderstands the indemnification provisions which only protects indemnified parties against liability incurred in third-party actions, not lawsuits involving the parties to the contract. Thus, this argument is not persuasive to this case and is rejected.

Second, Hersperger proffers that VDC cannot pierce the corporate veil and attach liability to an individual shareholder for the wrongs of the company. ECF No. 32, p. 5. VDC counters by saying that it sues Hersperger for his own actions and wrongful conduct, under the "participation theory," not for the wrongdoing of the corporation itself. ECF No. 37, pp. 10-11. "Under the

---

[7] Parties agree to indemnify and hold harmless its **officers, directors, employees, agents, affiliates, successors, and permitted assignees** (collectively 'Indemnified Party') against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards penalties, fines, costs, or expenses of whatever kind including [reasonable] attorneys' fees, **that are incurred by Indemnified Party (collectively, 'Losses'), arising out of or related to any third-party claim** alleging:

(a) Breach or non-fulfillment of any provision of this Agreement by Indemnifying Party or Indemnifying Parties Personnel.

(b) Any negligent or more culpable act or omission of Indemnifying Party or its Personnel (including any reckless or willful misconduct) in connection with the performance of its obligations under this Agreement.

(c) Any bodily injury, death of any person, or damage to real or tangible personal property caused by the negligent or more culpable acts or omissions of Indemnifying Party or its Personnel (including any reckless or willful misconduct); or

(d) Any failure by Indemnifying Party or its Personnel to comply with any applicable federal, state, or local laws, regulations, or codes in the performance of its obligations under this Agreement. ECF No. 1-2, pp. 147-48, 161 (emphasis added).

participation theory, the court imposes liability on the individual as an actor rather than an owner. Such liability is not predicated on a finding that the corporation is a sham and mere alter ego of the individual corporate officer.  Instead, liability attaches where the record establishes the individual's participation in the tortious activity." *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) (citation omitted).

"[P]iercing the corporate veil is an equitable remedy whereby 'a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation.'" *In re Blatstein,* 192 F.3d 88, 100 (3d Cir.1999) (internal quotation and citation omitted).  The corporate veil is pierced only when it is determined that the corporation is 'an artifice and a sham to execute illegitimate purposes and [an] abuse of the corporate fiction and immunity that it carries.'" *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1521 (3d Cir. 1994) (internal quotation and citations omitted).  The doctrine allows a litigant to charge a person or entity controlling a corporation with 'derivative liability.'" *United States v. Bestfoods,* 524 U.S. 51, 64 (1998).  This is not the type of litigation in front of this Court as it pertains to Hersperger.  VDC is not suing OOH and claiming that it is a sham company so that it may go after its representative.  VDC's claims of Negligent Misrepresentation (and Fraud) are claims sounded in tort against Hersperger himself *and* OOH.

"The participation doctrine is 'a theory which imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation.'" *Oldcastle Precast, Inc. v. VPMC, Ltd.,* 2013 WL 1952090, at *14 (E.D.Pa. May 13, 2013) (*quoting First Realvest, Inc. v. Avery Builders, Inc.*, 600 A.2d 601, 604 (Pa.Super.1991)). *See also Wicks v. Milzoco Builders, Inc.,* 470 A.2d 86, 90 (Pa. 1983) ("[A]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor;"); *Guzzi v. Morano,*

2013 WL 4042511, at *9 (E.D.Pa. Aug. 8, 2013) ("[A] corporate officer can be held personally liable for a tort committed by the corporation when [he] or she is sufficiently involved in the commission of the tort.") (citations omitted) (finding no merit to the participation theory where plaintiff offered not "an iota of evidence that [defendant] personally or individually promised [plaintiff] anything"); *Shay v. Flight C. Helicopter Servs., Inc.,* 822 A.2d 1, 17 (Pa.Super.Ct.2003) ("To impose liability on a corporate officer pursuant to the participation theory, a plaintiff must establish that the corporate officer engaged in misfeasance, *i.e.* the improper performance of an act.") (citations and internal quotations omitted).

Hersperger's defense is unpersuasive and off-point. The claim for Negligent Misrepresentation will not be dismissed.

### E.  Fraud as to Defendants

Defendants made the same arguments to dismiss the Fraud claim as they did to the Negligent Misrepresentation claim. The Court addressed these defenses above and need not address them again here. The result is the same that VDC has pled a plausible claim. The Fraud claim falls outside the contract terms and thus it will not be dismissed. Hersperger's defenses are inapplicable.

### F.  Legal and Equitable Accounting as to OOH

VDC seeks a legal and equitable accounting of "the payment status of all Project claims, the amount of Project claims submitted to third-party payers, the amount of outstanding Project claims not yet submitted to third-party payers, the payments that have been collected, and how such payments have been distributed, both in total and at the pharmacy level, as well as costs." ECF No. 1-2, pp. 134, 135-36. OOH responds that there is no fiduciary duty relationship between the parties because VDC already has an adequate remedy at law. ECF No. 30, p. 11. VDC replies

that a joint venture, such as the one at hand, causes the parties to owe each other a fiduciary duty and that there is no adequate remedy at law to replace the accounting.  ECF No. 38, pp. 13-14.

Pennsylvania Rule of Civil Procedure 1021(a)[8] provides for the right to demand an accounting at law. Pa. R. Civ. P. 1021(a).  "The right to relief in the form of an accounting pursuant to Rule 1021 is merely an incident to a proper assumpsit claim." *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. 1987).  A legal accounting is "not a claim, but a demand for relief." *Canfield v. Statoil USA Onshore Properties Inc.*, No. CV 3:16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017) (citing Pa. R. Civ. P. 1021(a)).  To state a claim that will support a legal accounting, a plaintiff must allege that:

> (1) there was a valid contract, express or implied, between the parties whereby the defendant
> (a) received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant, or
> (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and
> (2) the defendant breached or was in dereliction of his duty under the contract.

*Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 387 (E.D. Pa. 2019).  It is the Court's opinion that VDC and OOH were engaged in a joint venture in which they owed each other a fiduciary duty.  At this stage of litigation, the Court is uncertain of whether there is an adequate remedy at law.

VDC has plausibly plead facts to support that there was a valid contract; that OOH received or oversaw the entity that received monies as part of the joint venture; that OOH had a legal duty

---

[8] The Court addresses this Pennsylvania statute because it is a substantive statute, not procedural, and it has been addressed by other Federal Courts in the Third Circuit.

to account to VDC and failed to do so; and that this failure was in dereliction to OOH's duty under the contract. The Motion to dismiss will be denied.

## IV.    Conclusion

IT IS ORDERED that OOH's Motion to Dismiss (ECF No. 29) is GRANTED in part and DENIED in part and Hersperger's Motion to Dismiss (ECF No. 31) is DENIED. The Court Orders as follows:

- Motion to Dismiss Breach of Contract claim for Second Project Agreement as to OOH is DENIED;

- Motion to Dismiss Breach of Contract claim for First Project Agreement as to OOH is DENIED;

- Motion to Dismiss Unjust Enrichment claim as to OOH is GRANTED, this claim is dismissed without prejudice;

- Motion to Dismiss Negligent Misrepresentation claim as to Defendants is DENIED;

- Motion to Dismiss Fraud claim as to Defendants is DENIED;

- Motion to Dismiss Legal Accounting as to OOH is DENIED;

- VDC must effectuate proper service on Hersperger according to the Federal Rules of Civil Procedure on or before August 2, 2024.

Dated:  July 3, 2024

Stephanie L. Haines
United States District Judge